IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 15, 2011

**STATE OF TENNESSEE v. ROBERT WAYNE COOPER**

**Direct Appeal from the Circuit Court for Montgomery County
Nos. 40900545; 40901088     John H. Gasaway, III, Judge**

_____

**No. M2011-00124-CCA-R3-CD - Filed March 15, 2012**

_____

The Defendant-Appellant, Robert Wayne Cooper, entered guilty pleas to four counts of burglary, a Class D felony, in the Montgomery County Circuit Court.  The trial court sentenced him to forty-two months for each count, imposed concurrent sentences for three of the burglary counts, and ordered that these sentences be served consecutively to the remaining burglary count, for an effective sentence of eighty-four months in the Tennessee Department of Correction.  On appeal, Cooper argues that the trial court erred by:  (1) imposing a partially consecutive sentence alignment, and (2) imposing a sentence of total confinement.  Upon review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Roger E. Nell, District Public Defender; Charles S. Bloodworth, Assistant Public Defender, Clarksville, Tennessee, for the Defendant-Appellant, Robert Wayne Cooper.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; John W. Carney, Jr., District Attorney General; Arthur Bieber and Timothy J. Peters, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

During the May 2009 term, the Montgomery County Grand Jury returned a fifteen-count indictment against Cooper in case number 40900545.  This indictment alleged that Cooper committed the following offenses at Langford Welding and Steel on December 1, 2008:  Count 1, burglary of a non-habitation; Count 2, theft of property valued at $1,000 or more but less than $10,000; and Count 3, vandalism of property valued at more than $500 but less than $1,000.  The indictment also alleged that Cooper committed the following

offenses at Red River Block on December 24, 2008: Count 4, burglary of a non-habitation; Count 5, theft of property valued at $1,000 or more but less than $10,000, and Count 6, vandalism of property valued at $1,000 or more but less than $10,000. The indictment further alleged that Cooper committed the following offenses at Lui Heimansohn Scrap Metals on January 3, 2009: Count 7, burglary of a non-habitation; Count 8, theft of property valued at $10,000 or more but less than $60,000; and Count 9, vandalism with damage to property valued at $1,000 or more but less than $10,000. Finally, this indictment alleged that Cooper committed the following offenses on January 13, 2008: Count 10, felony evading arrest; Count 11, felon in possession of a handgun; Count 12, possession of marijuana; Count 13, possession of drug paraphernalia; Count 14, possession of a 38 caliber handgun with its identifying information altered, covered, defaced, destroyed, or removed with intent to conceal or misrepresent the identity; and Count 15, possession of a burglary tool.

In addition, during the September 2009 term, the Montgomery County Grand Jury returned a three-count indictment against Cooper in case number 40901088. This indictment alleged that Cooper committed the following offenses at Winn Materials on December 21, 2007: Count 1, burglary of a non-habitation; Count 2, theft of property valued at $1,000 or more but less than $10,000; and Count 3, vandalism of property valued at $1,000 or more but less than $10,000.

On August 16, 2010, Cooper entered guilty pleas in case number 40900545 to Counts 1, 4, and 7, the three counts of burglary of a non-habitation, and all the other counts in that indictment were dismissed. On the same date, Cooper also entered a guilty plea in case number 40901088 to Count 1, burglary of a non-habitation, and the other two counts in that indictment were dismissed.

**Plea Submission Hearing.** At the August 16, 2010 plea submission hearing, the State provided a summary of the facts supporting the entry of Cooper's guilty pleas:

Taking them in chronological order, under docket number 40901088[,] the State would attempt to prove that [Cooper] com[m]itted the burglary of a non[-]habitation; that is[,] Winn Materials, . . . on December 21[,] 2007.

The proof the State would present is that the building was broken into, and the [modus operandi] in each of these burglaries . . . [was] substantially the same. It was a commercial building; it was late at night; [Cooper] would cut the telephone lines or otherwise disrupt the alarm system, enter the building either through a door, a rooftop, but forced entry into the building, typically seize a safe and either open the safe on the spot or take the safe with him in another vehicle and open it later.

-2-

. . . .

On that December 21[, 2007] burglary of Winn Materials no one was immediately apprehended. Blood was recovered where the perpetrator had cut himself in an effort to get into the building, but [law enforcement] didn't have any person to match it to [sic][,] and the case went inactive in 2008.

In 2008 . . . three [more] burglaries took place within about a one[-] month period; using a similar [modus operandi. The first of these three burglaries occurred at] Langford Steel on December[ 1, 2008], that is count one of indictment 40900545; then three weeks later Red River Block [was] burglarized in a similar [manner], that is count four of indictment ending in 545, and then the Lui Heimansohn, Curtis Mize recycling facility out on the bypass was burglarized [in] a similar [manner] on January [3,] 2009, and in that burglary the safe was actually taken out of the building.

[Cooper] was apprehended and then escaped from custody; he was serving a general sessions sentence. He was identified at a truck stop by a highway patrolman who saw [Cooper] sleeping in his car. When he was roused[, Cooper drove off] in [his] vehicle, [and during the] attempt to make an escape[,] he was forced into a field where he abandoned the vehicle. [Cooper] was apprehended and in the vehicle [were] fruits, evidence[,] and instrumentalities of the . . . 2008, 2009 burglaries . . . . Blood was drawn from Mr. Cooper[,] and he was matched to the burglary [of Winn Materials] that had been unsolved since December of 2007 . . . .

So in each of those two indictments, [409]01088 and . . . [409]00545 [Cooper] is charged [with] a series of offenses, each one consisting of a burglary [of a] non[-]habitation, a theft for the property taken, and a vandalism for damage either to the building and/or the safe . . . and/or [the] telephone lines.

In the second indictment I mentioned[, 40900]545[,] . . . [there were] additional counts resulting from the evading arrest [and the] drug paraphernalia that was found in the vehicle after [Cooper] abandoned his vehicle and so on; generally speaking [the] misdemeanor offenses [in] counts ten through [fifteen]. And, of course, [Cooper], as I've stated, was [on] escape status. That has turned into a misdemeanor escape warrant – [under] docket . . . 40900478.

-3-

The settlement is as follows, Your Honor: [Cooper] pleads guilty to each [count charging him with burglary] of the non[-]habitation; that is[, Cooper] pleads guilty in count one to the burglary of Winn Materials in [409]01088, an offense occurring on December 21, 2007; under [the] indictment number . . . [40900]545[, Cooper also] pleads guilty in count one, that's Langford Welding and Steel from December[ 1,] 2008; Red River Block, count four, occurring on December [24,] 2008[, a]nd Lui Heimansohn Salvage, Curtis Mize, occurring on January [3, 2009], that's count seven. The other counts would be dismissed in settlement, as well as the misdemeanor escape [count] in the indictment [number] . . . [40900]478.

The State noted that it had originally filed a "[R]ange two notice" based on some Class E felony convictions that Cooper received approximately nineteen to twenty-three years before committing the offenses in this case. However, the State asserted that, in exchange for the entry of Cooper's guilty pleas to the four burglaries in this case, which saved the time and expense of several jury trials and which made expert DNA testimony unnecessary, it had agreed to sentence Cooper as a Range one, standard offender.

**Sentencing Hearing.** At the December 2, 2010 sentencing hearing, the State's only proof was the presentence investigation report, which was admitted into evidence. This report showed that Cooper's criminal history included two felony convictions and twenty misdemeanor convictions, which are summarized in the table below:

| Date of Conviction | Offense | Punishment |
|---|---|---|
| August 6, 1984 | Possession of weapon with intent to go armed | Sentence of 11 months, 29 days suspended after service of 120 days; payment of court costs |
| October 2, 1984 | Altering the permanent identification number on a weapon | Service of 120 days at a local workhouse; payment of $98.75 in court costs |
| October 2, 1984 | Driving with a revoked license | Sentence of 11 months, 29 days suspended after service of 48 hours; payment of $50 fine plus court costs |
| October 2, 1984 | Possession of marijuana | Sentence of 11 months, 29 days suspended after |

| | | service of 120 days; payment of court costs |
|---|---|---|
| October 2, 1984 | Failure to obey traffic laws/ rules of the road | Sentence of 11 months, 29 days suspended after service of 30 days; payment of $10 fine; this sentence was served concurrently with sentences received for previous arrest |
| November 18, 1986 | Failure to obey traffic laws/ rules of the road | Vehicle forfeited. |
| December 19, 1986 | Contributing to the delinquency of a minor | Sentence of 11 months, 29 days suspended after service of 2 days; payment of $250 fine plus court costs; this sentence was served concurrently with sentences received for previous arrests |
| December 19, 1986 | Possession of marijuana | Sentence of 11 months, 29 days suspended after service of 2 days; payment of $250 fine plus court costs; this sentence was served concurrently with sentences received for previous arrests |
| May 15, 1987 | Possession of burglary tools (Class E felony) | Three-year suspended sentence to be served on supervised probation |
| March 4, 1988 | Assault and Battery (committed approximately one month after he committed possession of burglary tools offense) | sentence of 11 months, 29 days suspended; this sentence was served Concurrently with his three-year sentence for possession of burglary |

| | | |
|---|---|---|
| | | tools |
| March 11, 1991 | Simple Assault (was originally charged with aggravated assault) | Sentence of 11 months, 29 days suspended after service of 6 months |
| February 6, 1991 | Operating a vehicle without a registration and without registered plates<br><br>Failure to exhibit driver's license on demand<br><br>Undefined offense | Forfeiture of vehicle |
| October 25, 1991 | Failure to abide by traffic laws/rules of the road | Forfeiture of vehicle |
| March 23, 1993 | Offense involving Schedule VI drug not less than one-half (½) ounce nor more than ten pounds (10 lbs.) (committed within approximately ten days of prior offense for failure to abide by traffic laws/rules of the road) (Class E felony) | Two-year suspended sentence |
| December 10, 1992 | Driving on a revoked license | Sentence of 11 months, 29 days suspended; payment of $50 fine plus court costs; suspension of driver's license |
| June 16, 1994 | Public intoxication | Payment of fine and court costs |
| May 13, 2008 | Resisting a stop, frisk, halt, arrest, or search | Sentence of 11 months, 29 days suspended |
| May 13, 2008 | Evading arrest | Sentence of 11 months, 29 days suspended |

| May 13, 2008 | Misdemeanor escape (originally charged with felony escape) | Sentence of 11 months, 29 days suspended after service of 10 days |
| --- | --- | --- |
| July 21, 2008 | Theft - up to $500 (originally charged with burglary - 1st degree) | Sentence of 11 months, 29 days |

The presentence investigation report also showed that Cooper had received probation and parole for some of his convictions and had participated in the "boot camp" program in the past. In addition, the report indicated that Cooper had "a history of unwillingness to comply with the conditions of a sentence involving release in the community as evidenced by several violations of probation and parole."

Cooper indicated in the report that he had graduated from high school, had not pursued any further education, and had received no vocational training. This educational information could not be verified. Cooper also claimed that he had worked in the concrete pouring and finishing business for several different employers for more than twenty-seven years and had most recently worked for Ace Concrete for ten years. He also stated that he had earned money painting automobiles. However, this employment history could not be verified. In the report, Cooper indicated that he was "confident" that he could find employment if released from confinement. He also told the investigating officer that he did not use illegal drugs even though he "grew them and sold them." However, a presentence report from an earlier criminal case showed that Cooper had a "preferred habit" of using marijuana, which began when he was sixteen years old.

Cooper, age forty-seven, testified in his own behalf at the sentencing hearing. He admitted that he had been convicted of a Class E felony marijuana offense in 1993, and a Class E felony possession of burglary tools offense in 1987. When the State asked him about his Stewart County conviction for escape, Cooper responded that he had been convicted of attempted escape because he had "tried to walk out of the jail." He also acknowledged that he had been placed in a workhouse as punishment for a theft of property conviction and that he had escaped from the workhouse detail after eight days. He explained that he escaped from the detail because no one realized that he was serving a two-year probationary sentence for a case in Stewart County at the time that he was sentenced to the workhouse, so he panicked and "did it again."

Cooper stated that following his conviction for theft in July 2008, he refrained from committing burglaries until December 2008 when he began burglarizing businesses again because the weather turned cold and he had no work and no place to stay. He explained that all of the victim businesses were in the concrete business. He stated that he knew Bill

Langford of Langford Fabricating because he and Langford used to be partners in a concrete business. He said he also knew Lui Heimansohn because he used to sell Heimansohn's father-in-law "gensing, yellow root." Cooper said he specifically chose the businesses to burglarize because he suspected that they had money stored in safes. He said he would cut the telephone lines to the businesses so that the security systems would not notify the police. He initially claimed that he had not been to the victim's businesses prior to robbing them but later admitted that he had been to Lui Heimansohn's business approximately ten years before he burglarized it.

Cooper admitted he stole a total of $18,000 from the victim businesses. He acknowledged he had been to jail and to prison for previous offenses. He also admitted that he had been on probation for prior offenses and had violated his probation. Cooper also acknowledged he was on escape status from an eleven-month, twenty-nine-day sentence for a conviction in Montgomery County and was on probation for a conviction in Stewart County at the time that he committed the instant offenses.

Cooper said he did not fight with the highway patrolman that arrested him and did not have a history of violence. He refused to admit that he had a criminal history that included drug offenses and claimed that his marijuana conviction was for the sale and delivery of marijuana.

Cooper also made the following statement prior to being sentenced:

I would like to start [by] apologizing for what I did[,] and I can see everybody's point of view, what you are getting at [sic]. I could be trusted for Community Corrections, if I [were] allowed to be on it. I am capable of paying the money back . . . . That's all I [sic] got to say.

At the close of proof, Cooper's attorney reminded the court that Cooper had been in custody for approximately two years since his arrest. Defense counsel requested that the court consider the confinement Cooper had already served as punishment for the 2007 burglary and that the court impose a nine-year Community Corrections sentence as punishment for the three remaining burglary offenses. He suggested that if Cooper obtained employment and paid court-ordered restitution in full to the victim businesses, then he could be "stepped down" from a Community Corrections sentence to a supervised probation sentence after one year.

After hearing the proof and arguments from counsel, the trial court stated that it had considered the factors in code section 40-35-210, which included the evidence received at the sentencing hearing, the presentence report, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct involved,

the evidence offered regarding the applicable mitigating and enhancement factors, any statistical information from the Administrative Office of the Courts regarding sentencing practices for similar offenses in Tennessee, and the statement that Cooper made in his own behalf.

The trial court noted that Cooper was pleading guilty to four burglaries. The court determined that these guilty pleas constituted mitigation because Cooper's guilty pleas obviated the need for separate jury trials for each of the burglary counts. See T.C.A. § 40-35-113(13) (2006). The court also applied enhancement factor (1), that Cooper had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" because his criminal history included two felony convictions and numerous misdemeanor convictions. See id. § 40-35-114(1) (2006). The court also applied enhancement factor (8) because Cooper, "before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]" See id. § 40-35-114(8) (2006). Finally, the trial court applied enhancement factor (13) to the offenses in case number 40900545 because at the time that these three burglaries were committed, Cooper was "released on probation." See id. § 40-35-114(13)(C) (2006). This factor also could have been applied to these offenses because Cooper was on escape status at the time he committed these burglaries. See id. § 40-35-114(13)(H) (2006).

The trial court also stated that it considered the sentencing purposes and considerations outlined in sections 40-35-102 and -103. Regarding the factors in section 40-35-103, the court stated:

> [T]he Court has considered whether confinement is necessary to avoid depreciating the seriousness of these offenses, or whether confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses[,] but more importantly, the Court has considered under sub-part ([C]) whether measures less restrictive than confinement have frequently or recently been applied unsuccessfully to [Cooper].

Because Cooper entered guilty pleas to four counts of burglary as a Range I, standard offender, he faced a sentence of two to four years. See id. § 40-35-112(a)(4) (2006). At the conclusion of the hearing, the trial court sentenced Cooper to forty-two months for each burglary count, imposed concurrent sentences for three of the burglary counts, and ordered that these sentences be served consecutively to the December 21, 2007 burglary count, for an effective sentence of eighty-four months in the Tennessee Department of Correction. Cooper subsequently filed a timely notice of appeal.

**ANALYSIS**

**Sentencing.** Cooper contends that the trial court erred in ordering a partially consecutive alignment of sentences and erred in denying alternative sentencing. In response, the State argues that the record supports the sentence imposed by the trial court in this case.

This case is governed by the 2005 amended sentencing act because all four of the burglary offenses occurred after the new sentencing act's effective date of June 7, 2005. See id. § 40-35-210 (2006), Compiler's Notes. Under the amended sentencing act, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the new law "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Tennessee Supreme Court explained the impact of the 2005 amended sentencing act:

> The amended statute no longer imposes a presumptive sentence. Rather, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." Id. § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," id. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," id. § 40-35-103(5).

Id. at 343 (internal footnote omitted). The court also emphasized the broad discretion the trial court has in sentencing a defendant under this act:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find

that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Because it appears that the trial court properly considered the purposes and principles of the sentencing act, our review is de novo with a presumption of correctness. See id. at 345-46; Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). The defendant has the burden of showing the impropriety of the sentence. See T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

**I. Consecutive Sentencing.** Cooper contends that the trial court erred by ordering a partially consecutive alignment of his sentences. First, he asserts that the trial court failed to make any findings regarding the factors for consecutive sentencing in section 40-35-115(b) and failed to otherwise explain the imposition of a partially consecutive sentence alignment mandated by section 40-35-210(e), which requires the trial court to "place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." Although Cooper assumes that the court sentenced him to a partially consecutive sentence because he committed three of the instant burglaries while on probation, he claims that the trial court did not apply this factor on the record. See id. § 40-35-115(b)(6) (2006). Moreover, he argues that because the trial court used the factor that he committed three offenses in this case while on probation when determining the length of his sentences, the court's use of this same fact to sentence him to a consecutive sentence under section 40-35-115(b)(6) violates his double jeopardy protections and violates his right to due process. See State v. Wyatt, No. 03C01-9301-CR-00016, 1994 WL 41332 (Tenn. Crim. App., at — , Feb. 9, 1994), perm. app. denied (Tenn. May 16, 1994) ("The aggravating circumstances relied upon by this Court to justify the imposition of consecutive sentencing are not redundant or duplicative of any enhancement factors relied upon in determining appellant's basic sentence.").

In response, the State argues that the record in this case supports the imposition of a partially consecutive sentence alignment. The State also asserts that "[t]here is no prohibition in the 1989 Sentencing Act against using the same facts and circumstances both to enhance sentences under the applicable enhancement factors and to require those sentences to be served consecutively." See State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993) (also citing State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991) for the proposition that "consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes is allowed"); State v. Melvin, 913 S.W.2d 195, 205 (Tenn. Crim. App. 1995) (holding that "[t]he use of enhancement factors to increase the length of a sentence within the appropriate range does not bar the use of these facts in determining whether consecutive sentences should be imposed"). We agree with the State.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2006). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven

categories in section 40-35-115(b) (2006). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Id. § 40-35-102(1) (2006). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." Id. § 40-35-103(2) (2006).

Here, in determining the length of each of the four burglary sentences, the trial court found that Cooper had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" Id. § 40-35-114(1) (2006). The court noted that Cooper's criminal record included two previous felony convictions and at least fifteen misdemeanor convictions.[1] See id. § 40-35-115(b)(2) (2006). At the sentencing hearing, Cooper never disputed his criminal history. This court has held that "[e]xtensive criminal history alone will support consecutive sentencing." State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)). Moreover, the court noted that three of the four burglaries were committed while Cooper was on probation. See T.C.A. § 40-35-114(13)(C), -115(b)(6) (2006).

We conclude that the trial court did not err in ordering Cooper to serve concurrent sentences for counts one, four, and seven of indictment number 40900545 and in ordering that these sentences be served consecutively to the burglary conviction in indictment number 40901088. Although the trial court did not explicitly refer to the factors in section 40-35-115(b), we conclude that the court provided an adequate record regarding the need for a partially consecutive alignment of sentences. The record shows that Cooper's criminal record was extensive and that three of the four burglaries were committed while Cooper was on probation. See id. § 40-35-115(b) (2), (6) (2006). Accordingly, Cooper is not entitled to relief on this issue.

**II. Alternative Sentence.** Cooper also argues that the trial court erred by failing to consider an alternative sentence. He contends that the trial court failed to apply any of the factors in section 40-35-103(1) before ordering him to serve a sentence of confinement. Finally, he argues that the trial court, in sentencing him to a sentence of total confinement, failed to consider the General Assembly's repeated preference for sentences requiring restitution to victims. See id. §§ 40-35-102(3)(D) ("[R]estitution to victims [is encouraged] where appropriate."), 40-35-103(6) ("Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these."), 40-35-104(c)(2) (the payment of restitution to a victim may be combined with an alternative sentence where appropriate), 40-35-304 (outlining the

---

[1]The presentence report shows that Cooper's criminal history actually included twenty misdemeanor convictions.

procedural rules regarding restitution). In response, the State asserts that the record supports a sentence of confinement, especially since Cooper was on escape status from an eleven-month, twenty-nine-day sentence in Montgomery County and was on probation in Stewart County when he committed three of the burglaries in this case. We agree with the State.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006). A trial court should consider the following when determining whether there is "evidence to the contrary" that would prevent an individual from receiving alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see also Ashby, 823 S.W.2d at 169.

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b) (2006)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall

-14-

automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285 (Tenn. 1978)). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See T.C.A. § 40-35-103(5) (2006). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5) (2006). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Here, the trial court placed particular emphasis on the fact that confinement was necessary because "[m]easures less restrictive than confinement [had] frequently or recently been applied unsuccessfully to the defendant[.]" T.C.A. § 40-35-103(1)(C) (2006). Although Cooper was considered a favorable candidate for alternative sentencing, the fact that he had violated his probation and parole several times in the past and had committed three of the four burglaries in this case while on probation for a separate offense constituted "evidence to the contrary" that prevented him from receiving an alternative sentence. Moreover, Cooper failed to establish his suitability for full probation. Lastly, Cooper was ineligible for a Community Corrections sentence because the trial court determined that total confinement was appropriate in this case and because Cooper was on escape status that the time he committed three of the four burglaries in this case. See id. § 40-36-106(a)(2) (2006). Accordingly, Cooper is not entitled to relief.

## CONCLUSION

-15-

Upon review of the record, we affirm the trial court's judgments.

_____
CAMILLE R. McMULLEN, JUDGE